[L. A. No. 29439.   In Bank.   Nov. 15, 1967.]

DAVID DAAR, Plaintiff and Appellant, v. YELLOW CAB
COMPANY, Defendant and Respondent.

David Daar, in pro. per., Max Tendler and Leon Perlsweig for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Jay L. Shavelson, Assistant Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Hanna & Morton, David A. Thomas and Douglas P. Grim for Defendant and Respondent.

SULLIVAN, J.—Plaintiff David Daar, suing ''in behalf' of himself and all other persons similarly situated,'' appeals from an order of the superior court sustaining defendant's demurrer to plaintiff's complaint without leave to amend and transferring the cause to the municipal court.[1] It is clear from the record that the action was transferred pursuant to Code of Civil Procedure section 396[2] after the court determined that plaintiff could neither maintain a class action (§ 382) nor state a cause of action for his prior damages in excess of $5,000 (§ 89).[3] Initially we must determine whether the order of January 28, 1965, is appealable.

Section 963 provides that an appeal may be taken from a superior court from ''a final judgment entered in an action, . . .'' In determining whether there has been a final judgment, sometimes a difficult question, we have long adhered to the rule ''that the question, as affecting the right of appeal, is not what the form of the order or judgment may be,

---

[1] The order entered in the minutes on January 28, 1965, and without further formal order reads: ''Demurrer sustained per paragraph VIII of Demurrer without leave to amend. Court *sua sponte* transfers cause to Municipal Court. Plaintiff to pay transfer fee.''

Paragraph VIII of the demurrer reads: ''This court has no jurisdiction over this matter concerning either the first or second cause of action.'' In his notice of appeal plaintiff also appeals from all other orders entered in the case at any time and from ''such judgment, orders and rulings . . . pertaining to this case.'' The record discloses no formal judgment. Plaintiff now makes clear to us that he is appealing only from the above-quoted order of January 28, 1965. The attempted appeal from all other orders, rulings and judgments must therefore be dismissed.

[2] Code of Civil Procedure section 396 provides in relevant part: ''If an action or proceeding is commenced in a court which lacks jurisdiction of the subject matter thereof, as determined by the complaint or petition, if there is a court of this State which has such jurisdiction, the action or proceeding shall not be dismissed . . . but shall, on the application of either party, or *on the court's own motion,* be transferred to a court having jurisdiction of the subject matter . . . and it shall thereupon be entered and prosecuted in the court to which it is transferred as if it had been commenced therein, all prior proceedings being saved.'' (Italics added.)

Hereinafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

[3] California Constitution article VI, section 5 (as it read prior to November 8, 1966) provided in part: ''The superior courts shall have original jurisdiction in all civil cases and proceedings (. . . except, also cases and proceedings in which jurisdiction is or shall be given by law to municipal or to justices or other inferior courts); . . .''

Section 89 provides in part: ''1. Municipal courts shall have original jurisdiction of civil cases and proceedings as follows: (a) In all cases at law in which the demand, exclusive of interest, or the value of property in controversy, amounts to five thousand dollars ($5000) or less, . . .''

but what is its legal effect. [Citations.]" (*Howe* v. *Key System Transit Co.* (1926) 198 Cal. 525, 531 [246 P. 39]; *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; *Bakewell* v. *Bakewell* (1942) 21 Cal.2d 224, 227 [130 P.2d 975]; *In re Los Angeles County Pioneer Society* (1953) 40 Cal.2d 852, 857-858 [257 P.2d 1]; *People* v. *Succop* (1966) 65 Cal.2d 483, 486 [55 Cal.Rptr. 397, 421 P.2d 405].) Although an order sustaining a demurrer with or without leave to amend is not the final judgment in the case (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8]) and is nonappealable (*Evans* v. *Dabney* (1951) 37 Cal.2d 758, 759 [235 P.2d 604]; *Cole* v. *Rush* (1953) 40 Cal.2d 178 [252 P.2d 1]), here the order under examination not only sustains the demurrer, but also directs the transfer of the cause from the superior court, where it was commenced as a class action, to the municipal court. We must assay the total substance of the order. It determines the legal insufficiency of the complaint as a class suit and preserves for the plaintiff alone his cause of action for damages. In "its legal effect" (*Howe* v. *Key System Transit Co., supra*) the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff. (See *McClearcn* v. *Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449]; *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 582 [283 P.2d 704]; *Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 303 [259 P.2d 901].) It has virtually demolished the action as a class action. If the propriety of such disposition could not now be reviewed, it can never be reviewed. This court has observed that it "has long been the rule in this state that an order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment." (*Herrscher* v. *Herrscher, supra*, 41 Cal.2d at pp. 303-304; see *Southern Pac. R.R. Co.* v. *Willett* (1932) 216 Cal. 387, 390 [14 P.2d 526], and cases therein cited.) We conclude that the order in the case at bench is in legal effect a final judgment from which an appeal lies and we therefore proceed to the issues raised before us.

Plaintiff, in behalf of himself and all other persons similarly situated, commenced the instant action on November 20, 1964, to recover as damages overcharges allegedly made by defendant Yellow Cab Company[4] (hereinafter referred to

---

[4]Sole defendant appearing herein (by demurrer, see § 1014) is Yellow Cab Company of California, named in the complaint as Yellow Cab Com-

as Yellow Cab) for taxicab services furnished to plaintiff and the aforesaid other persons during the four years immediately preceding the commencement of the action. The complaint is in two counts: the first, seeking recovery on behalf of taxicab users paying for the services with script book coupons; and the second seeking recovery on behalf of taxicab users paying cash for the services.

Count one alleges in substance that defendant is engaged in the business of providing taxicab transportation in the City of Los Angeles (hereinafter referred to as the city); that at all times mentioned, said defendant has been franchised in writing and by agreement with the Public Utilities Commission of said city to engage in such business and to charge rates in taxicabs only in those amounts fixed by the commission; that defendant used meters approved by the commission which automatically registered the rates and the cost of transportation of each particular trip; that the meters could be set to register rates of transportation set by the commission and "could be adjusted to any other unit of rate for purposes of registering the total cost of each trip"; that defendant, under the conditions of its franchise, could charge no rates other than those fixed by the commission; that defendant was authorized to and did sell coupon books, denominated "Yellow Cab Script" to be accepted by it in payment for transportation; that each of said script books bore a serial number and contained coupons of various denominations, each bearing the same serial number as that of the respective book.

It is further alleged in count one that plaintiff is a resident of the County of Los Angeles and "sues on behalf of himself and all others similarly situated"; that "all members of this class are purchasers and users of said script books" and have paid for taxicab transportation with coupons from the books; that plaintiff "and all those on whose behalf this action is maintained are purchasers and users of the said script books and the taxicab transportation furnished by the defendants to them within four years last past"; that the names and addresses of all purchasers and users of script books can be definitely ascertained from defendant's books and records; and that there are common interests of facts and law that unite

pany. We therefore make no reference herein to several defendants designated in the complaint by fictitious names (see § 474) and unless otherwise indicated all reference to "defendant" hereafter shall mean defendant Yellow Cab Company.

plaintiff and all the members of the class in whose behalf the action is instituted.[5]

Count one further alleges that within four years immediately preceding the commencement of this action, defendant constructed, maintained and installed in its taxicabs meters which were to be used for the purpose of registering each trip cost at the approved rate established by the commission and as represented by defendant to plaintiff and the members of the above class; that defendant ''did contract in writing with the plaintiff and the aforesaid class'' to accept coupons in payment of taxicab service and ''did contract in writing with the City of Los Angeles and the plaintiff and persons of the aforesaid class'' that taxicab service would be furnished at rates established by the commission; that defendant did not adjust and maintain the meters to register rates and mileage approved by the commission and ''did instead adjust and set the meters to register rates in excess of same, and did thereby charge to its customers, the plaintiff and aforesaid class of persons, an amount in excess of that which was lawful and in accordance with the agreements made between defendants and the Public Utilities Commission and between the defendants and plaintiff and the aforesaid class of persons.''

It is further alleged in count one that ''by reason of the foregoing,'' defendant overcharged plaintiff and members of the aforesaid class for taxicab services ''within four years

[5]The common interests of facts and law are alleged to be as follows:

''1. Each member of plaintiff's class has purchased the Yellow Cab script books, as hereinbefore set forth.

''2. Each member of plaintiff's class has paid an amount of money in cash for the said script books in advance, prior to the use thereof.

''3. Each member of the said class has used Yellow Cab transportation facilities within the period of four years last past prior to the filing of the within action and has used the Yellow Cab script coupons in payment of their fares for taxicab transportation furnished by the defendants to them.

''4. Each member of the class has sustained a loss by virtue of the facts hereinafter set forth.

''5. Each individual plaintiff member of the class is known to the defendants in that the defendants have maintained detailed records of the identity of the purchasers and users of each such cab script book.

''6. That the members of the class for whom this action is maintained exceeds [sic] several thousand persons and they are so numerous that it is impractical at this time to bring them all into this action individually as parties hereto.

''7. That proof of a common or single state of facts and law will establish the right of each member of the class of users of Yellow Cab script to recover damages.

''8. That the percentage of rate of overcharge to the plaintiff and each member of the class by the defendants was identical and uniform at all times herein mentioned.''

last past''; that the exact amount of said overcharge is not known to plaintiff and the aforesaid class but is and can be ascertained from defendant's books and records, and upon information and belief exceeds the sum of $100,000; that there is no plain, speedy or adequate remedy other than by maintenance of the instant class action;[6] that ''within four years last past,'' plaintiff individually has expended $100 for script books, has used the coupons therefrom for payment of transportation and has been overcharged as set forth above in an amount unknown to him but known to defendant.

Count two, after incorporating by reference those allegations of count one dealing with defendant's business, franchise, use of meters, adjustment of meters to register other than established rates and resulting overcharges, but omitting all references to script book coupons, alleges in substance that plaintiff is a resident of Los Angeles County and ''sues on behalf of himself and all others similarly situated''; that plaintiff ''and all others on whose behalf this action is maintained, are users of the taxicab services supplied by the defendants''; and that there are common interests of facts and law that unite all the members of the class in whose behalf the action is instituted.[7]

Count two further alleges that defendant ''did contract in writing with the City of Los Angeles and the plaintiff that the said public transportation taxicab service would be furnished at rates set forth and designated'' by the commission; that ''in fact higher rates were charged plaintiff and his said

---

[6]In this connection plaintiff alleges that the overcharge has been ''a relatively small loss to each individual,'' that this fact makes it ''economically unfeasible'' to pursue remedies other than a class action and that ''there would be a failure of justice but for the maintenance of the within class action.''

[7]The common interests of facts and law are alleged to be as follows:

''1. Each member of the said class has used Yellow Cab transportation facilities within the period of four years last past prior to the filing of the within action and has paid for same in cash at the time each taxi trip was made by them.

''2. Each member of the class has sustained a loss by virtue of the facts hereinafter set forth.

''3. That the members of the class for whom this action is maintained exceed several thousand in number and they are so numerous that it is impractical to bring them all individually before the court at this time as parties hereto.

''4. That proof of a common or single state of facts will establish the right of each member of the class of users of YELLOW CAB transportation to relief.

''5. That the percentage of rate of overcharge to the plaintiff and each member of the class by the defendants was identical and uniform at all times herein mentioned.''

class''; that by reason of the foregoing, defendant "overcharged plaintiff and his class for public transportation in cabs furnished to them within four years last past; that the exact amount of the said overcharge is not at this time known to plaintiff, but is and can be ascertained at the time of the trial''; that the nature and amount of the overcharge is within the knowledge of defendant, and upon information and belief exceeds $100,000; that there is no plain, speedy or adequate remedy other than by maintenance of the instant class action; that ''within four years last past'' plaintiff has expended $100 cash[8] in connection with travel in defendant's taxicabs; and that defendant has refused and failed to account for such overcharges to the users of its taxicabs.

Plaintiff prayed for damages and an accounting.

Defendant's demurrer asserts that each of the two counts fails to state a cause of action (§ 430, subd. 6), fails to state a cause of action in that each does not contain the elements of a proper class action (§ 430, subd. 6) and evidences a nonjoinder of parties plaintiff (§ 430, subd. 4), and that the complaint is uncertain in various particulars (§ 430, subd. 9). In a separate specification (par. VIII) the demurrer asserts: ''This court has no jurisdiction over this matter concerning either the first or second cause of action.'' (§ 430, subd. 1.) Defendant also moved to strike particular portions of the complaint as being sham and redundant. The trial court sustained the demurrer on the basis of lack of jurisdiction (par. VIII thereof; see fn. 1, *ante*) without leave to amend, giving no reason for its action. Despite the court's specific reference to paragraph VIII of the demurrer, it is clear to us that its ruling embraces the ground that each of the two counts fails to state sufficient facts to establish the elements of a class action.

The issue confronting us on this appeal, therefore, is whether each of the two counts of the complaint states facts sufficient to constitute a proper class action under section 382. That section provides in relevant part: ''. . . and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.'' The section is based upon the equitable doctrine of virtual representation which '' 'rests

---

[8]Plaintiff's original allegation was that he ''expended cash in excess of $100.00.'' The court, upon the hearing of defendant's motion to strike, ordered the words ''in excess of'' stricken on the face of the pleading.

upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice.' '' (*Bernhard* v. *Wall* (1921) 184 Cal. 612, 629 [194 P. 1040], quoting from 15 Ency. of Pl. & Pr. 629 ; see *Weaver* v. *Pasadena Tournament of Roses Assn.* (1948) 32 Cal.2d 833, 837 [198 P.2d 514] ; *California Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850 [330 P:2d 778] ; *Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 291 [23 Cal.Rptr. 761, 373 P.2d 849] ; see also Chafee, Some Problems of Equity (1950), 200-205 ; 11 U.C.L.A. L.Rev. 308-309 ; 6 Stan.L.Rev. 120, 121-122.)

Although the statute appears to speak in the alternative, it uniformly has been held that two requirements must be met in order to sustain any class action : (1) there must be an ascertainable class (*Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 290 ; *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 842-843 ; *Barber* v. *California Emp. Stab. Com.* (1954) 130 Cal.App.2d 7, 14 [278 P.2d 762] ) ; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented (*Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 286 ; *California Gas. Retailers* v. *Regal Petroleum Corp., supra,* 50 Cal.2d 844, 850 ; *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 837, 841 ; *Noroian* v. *Bennett* (1919) 179 Cal. 806, 808-810 [179 P. 158] ; see also, *Hansberry* v. *Lee* (1940) 311 U.S. 32, 44-46 [85 L.Ed. 22, 61 S.Ct. 115, 132 A.L.R. 741] ; *Fallon* v. *Superior Court* (1939) 33 Cal.App.2d 48, 50-51 [90 P.2d 858].) (See generally, 1 Chadbourn, Grossman & Van Alstyne, Cal. Pleading (1961) Class Actions, § 631 et seq.; 2 Witkin, Cal. Procedure (1954) Representative or Class Suits, § 99 et seq.)

We shall examine the complaint in order to determine first whether it sets forth facts sufficient to show the requisite ascertainable class. Applicable precedents indicate that in observing the ascertainable class requirement they are at the same time giving recognition to the principle that a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action. To put it in another way, although a judgment in a class action is res judicata as to claims of members of the class represented therein (*Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 288, and cases therein cited ; *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 842), res judicata will not preclude subsequent actions by those whose rights to recover are based upon different facts. There-

fore, such individuals cannot properly be brought under the umbrella of a class action. (See *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 842-843; *Price* v. *Communications Workers of America* (1959) 167 Cal.App.2d 524, 532 [334 P.2d 632]; *Barber* v. *California Emp. Stab. Com., supra,* 130 Cal.App.2d 7, 15; 37 Cal.L.Rev. 525, 528; 6 Stan.L.Rev. 120, 132.)

In order to illustrate this point we find it convenient to allude briefly to the last three cited cases preceding a more detailed discussion of them later.

We articulated the foregoing rationale in *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 842-843, stating: "[T]hese unknown parties [who held identification stubs, but were refused tickets to the Rose Bowl game] are ascertainable only insofar as each may come forward and individually present proof of all of the facts necessary to authorize a recovery in accordance with the merits of his particular case, and judgment in one would by no means be judgment in any other." In *Barber* v. *California Emp. Stab. Com., supra,* 130 Cal.App.2d 7, 14, the court stated: "If the rights of each member of the class are dependent upon facts applicable only to him, there is not the requisite ascertainable class required for a representative suit." In *Price* v. *Communications Workers of America, supra,* 167 Cal.App.2d 524, 532 (overruled on other grounds in *Chance* v. *Superior Court, supra*), the court stated: "There is no community of interest regarding questions of law and fact between the named and the unnamed plaintiffs. In fact, there is no definite, ascertainable class. There is only a large number of individuals, each of whom may or may not have or care to assert a claim against the union. There could be an indefinite number of factual situations applicable to the about 300 of those claimed to be similarly situated whom the named plaintiffs seek to make parties to this action without their knowledge, consent, participation, and, so far as appears, regardless of their wishes. A decision favorable or adverse to the named plaintiffs or any of them could not determine the rights of any of the unnamed plaintiffs whom the named plaintiffs purport to represent. To permit this as a representative suit might deprive defendant of the right to assert any defenses it might have against individual, unnamed plaintiffs. A judgment that the named plaintiffs are or are not entitled to recover should not operate as res judicata against either the unnamed plaintiffs or against defendant union."

Defendant apparently fails to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit. ■ If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class. Presumably an accounting in the suit at bench will determine the total amount of the alleged overcharges; any judgment will be binding on all the users of taxicabs within the prior four years. However, no one may recover his separate damages until he comes forward, identifies himself and proves the amount thereof.

■ Thus, whether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved. If we conclude that the instant complaint properly sets forth a class action, the judgment herein will be res judicata as to all persons to whom the common questions of law and fact pertain. We therefore proceed to examine the complaint in order to determine whether it sets forth a sufficient community of interest.

A finding of a community of interest at this time may provoke later questions as to the res judicata effect of any judgment herein. ■ However, as Witkin says: "[A] distinction is sometimes drawn between the maintenance of the suit and its binding effect on the absent parties. A sufficient pleading of the conditions may withstand a demurrer and satisfy the court that the action should proceed. But if the judgment is thereafter collaterally attacked by an absent party, a more careful scrutiny of its representative character may be made in determining whether it is res judicata."[9] (2 Witkin, *op. cit. supra*, § 99, p. 1080.)

■ Defendant argues that the community of interest essential to a class action is one "between all the members of the purported class not only in the law and facts giving rise to the cause of action, but also *extending to the remedy* which will be awarded to the class members if their action

---

[9] Witkin quotes from *Hansberry* v. *Lee, supra*, 311 U.S. 32, 42: " 'It is evident that the considerations which may induce a court thus to proceed, despite a technical defect of parties, may differ from those which must be taken into account in determining whether the absent parties are bound by the decree or, if it is adjudged that they are, in ascertaining whether such an adjudication satisfies the requirements of due process and of full faith and credit.' " (2 Witkin, *op. cit. supra*, § 99, p. 1080.)

is successful." (Italics in original.)[10] In support of this argument defendant directs our attention to *Weaver* and *Chance* and also relies upon Witkin. The last authority states: "A common question is not enough to justify a class suit; common relief must also be sought." (2 Witkin, *op. cit. supra,* § 105, p. 1084.)

We have said that it is not essential to the establishment of a class action that a common fund exist. (*Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 288.) Under proper circumstances, the existence of a common fund is merely one way to satisfy the community of interest requirement. We have also said that it is not essential that the represented parties be so united in interest with the plaintiff as to make them necessary parties. (*Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 841.) Such an "interpretation would restrict . . . [the statute's] application in cases where 'many persons' or 'numerous parties,' though not necessary litigants, nevertheless have a 'common or general interest' in the subject-matter of the controversy as a premise for a class proceeding in the disposition of the merits of their collective claims." (32 Cal.2d at p. 841.)

Nor is a common recovery required in order to establish a community of interest. In *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 285, we observed: "It was indicated in *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 838-840, 842-843, that for related causes of action to preclude representative litigation they must be separate and distinct in the sense that every member of the alleged class would have to litigate numerous and substantial questions determining his individual right to recover against the named defendant or defendants following the rendering of a 'class judgment' which determined in plaintiffs' favor whatever questions were common among the plaintiffs sought to be represented as a class. (Accord: *Barber* v. *California Emp. Stab. Com.,* 130 Cal.App.2d 7, 15 [278 P.2d 762] ; see 6 Stan.L.Rev. 120, 128; cf. *Noroian* v. *Bennett,* 179 Cal. 806, 808-810 [179 P. 158].)" We continued there: "As stated by another authority, the community of interest requirement is lacking and separate and distinct claims present, in those situations

---

[10]It is not contended either that there is a conflict of interest between plaintiff and the other class members, or that plaintiff is not a member of the represented class, but only that the claims of the class members are separate and distinct. (See generally, 1 Chadbourn, *op. cit. supra,* §§ 632-636.)

'where each member of the class must establish his right to recover on the basis of facts peculiar to his own case.'[11] (1 Chadbourn, Grossman, Van Alstyne, California Pleading (1961) Class Actions, § 635, p. 543; see *Price* v. *Communications Workers of America*, 167 Cal.App.2d 524, 532-533 [334 P.2d 632]; *Watson* v. *Santa Carmelita Mut. Water Co.*, 58 Cal.App.2d 709, 718-719 [137 P.2d 757]; *Goodspeed* v. *Great Western Power Co.*, 19 Cal.App.2d 435, 443-444 [65 P.2d 1342]; *Ballin* v. *Los Angeles County Fair*, 43 Cal.App.2d Supp. 884, 887-888 [111 P.2d 753]; 71 Harv.L.Rev. 874, 938-939.)'' (58 Cal.2d at p. 285.)

Under Federal Rules of Civil Procedure former rule 23(a)(3), which required that a "common relief" be sought,[12] that phrase has been interpreted to cover those cases where the same type of relief, such as damages or an injunction, is sought by all as distinguished from the cases where some plaintiffs seek damages while others seek an injunction. (See *Harris* v. *Palm Springs Alpine Estates, Inc.* (9th Cir. 1964) 329 F.2d 909, 915; *Kainz* v. *Anheuser-Busch, Inc.* (7th Cir. 1952) 194 F.2d 737, 741; *McGrath* v. *Tadayasu Abo* (9th Cir. 1951) 186 F.2d 766, 770; *Oppenheimer* v. *F. J. Young & Co.* (2d Cir. 1944) 144 F.2d 387, 390; *York* v. *Guaranty Trust Co. of New York* (2d Cir. 1944) 143 F.2d

---

[11]Defendant cites and at oral argument heavily relied upon *Covert* v. *Nashville, C. & St. L. Ry. Co.* (1948) 186 Tenn. 142 [208 S.W.2d 1008, 1 A.L.R.2d 154], for the proposition that persons who have identical claims which may be satisfied by independent relief do not constitute a class. In *Covert*, two railway company passengers sued on behalf of " 'many hundreds of fare-paying passengers' " similarly situated for a declaratory judgment fixing their rights to recover excess fares paid. The excess represented the difference between intrastate passenger rates authorized by the Railroad and Public Utilities Commission and higher rates authorized by the Interstate Commerce Commission, charged by and paid to the railway company before the authorization for higher rates was annulled. The court held that under Tennessee law no class suit would lie since the alleged injuries were the result of separate and distinct transactions and each passenger had an adequate remedy at law for money damages. Under California law, however, the mere fact that separate transactions are involved for which the injured parties may seek independent relief does not of itself preclude a finding of the requisite community of interest for a class suit.

[12]Federal Rules of Civil Procedure rule 23(a), 28 U.S.C.A. (prior to February 28, 1966) read as follows: " (a) If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is . . . .

" (3) several, and there is a common question of law or fact affecting the several rights *and a common relief is sought.*" (Italics added.)

503, 528; *Weeks* v. *Bareco Oil Co.* (7th Cir. 1941) 125 F.2d 84, 88, 91; *Independence Shares Corp.* v. *Deckert* (3d Cir. 1939) 108 F.2d 51, 55, reversed on other grounds, *Deckert* v. *Independence Corp.* (1940) 311 U.S. 282 [85 L.Ed. 189, 61 S.Ct. 229].) It is noteworthy that in 1966 rule 23 was revised so as, *inter alia,* to eliminate the requirement of common relief. We also find of interest the additional criteria prescribed by rule 23[13] which, as will appear, are in substantial coincidence with our views, herein expressed, as to the applicable criteria under section 382.

As a practical matter, a requirement of common relief has no compelling importance and its absence presents no insuperable difficulties. A determination of the interest of each member of the class in any damages recovered does not seem to us dissimilar to a determination of each member's interest in a common trust fund, such determination sometimes being required after the common issues have been resolved in a class action. Only at such final stage do the individual interests become critical and does the community of interest requirement lose significance. ''It is not unusual for class actions to involve such subsidiary questions wherein individual creditors or groups thereof contest issues among themselves after common questions as to basic liability have been settled. (See Chafee, Some Problems of Equity (1950) Representative Suits, pp. 209, 223; 71 Harv.L.Rev. 874, 938, fn. 465; 6 Stan. L.Rev. 120, 130.)'' (*Chance* v. *Superior Court, supra,* 58 Cal. 2d 275, 287; see *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 587-588 [283 P.2d 704].)

---

[13]Federal Rules of Civil Procedure rule 23, 28 U.S.C.A. (as amended February 28, 1966) reads in part:

'' (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

'' (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .

'' (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.''

Indeed, rather than articulating any specific test, we have always maintained that " 'a determination of whether a particular plaintiff can fairly protect the rights of the group he purports to represent is necessarily dependent upon the facts and circumstances of each case.' " (*Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 288; *Bowles* v. *Superior Court, supra,* 44 Cal.2d 574, 587; see 11 U.C.L.A. L.Rev. 308, 312.)

In several cases, the facts have not supported the requisite community of interest to maintain a class suit. In *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, plaintiffs sued on behalf of themselves and others, all of whom held identification stubs but were refused tickets to the Rose Bowl game as a result of alleged fraudulent and unauthorized disposition of admission tickets, each seeking to recover the one hundred dollar statutory penalty imposed for the wrongful refusal of admission (former Civ. Code, §§ 53, 54). We found no community among the class, stating: "The causes of action of the several plaintiffs and the other unnamed aggrieved individuals are separate and distinct. The question, as to each individual plaintiff, is whether *he* 'as a person over the age of twenty-one years' presented himself and demanded admittance to the game, whether *he* tendered the price of the ticket, and whether, as to *him,* the refusal of admission was wrongful under section 53 of the Civil Code, entitling him 'to recover . . . his *actual damages,* and one hundred dollars in addition thereto.' (Civ. Code, 54; emphasis added.) Moreover, other independent factors of consideration arise in connection with the respective individual claims by reason of the provision that a 'person under the influence of liquor, or who is guilty of boisterous conduct, or [who is] of lewd or immoral character, may be excluded from any such [public] place of amusement.' (Civ. Code, § 53.) . . ." (32 Cal.2d at p. 838.) "While each would be 'similarly situated' in that his cause of action arises under the same statute, his recovery would rest on a distinct premise correlative with varying proof as to the facts of his particular case. In such circumstances there is not the necessary 'common or general interest' in the subject-matter of the litigation appropriate to the maintenance of a representative action as that type of proceeding has been analyzed in the adjudicated cases." (32 Cal.2d at p. 840; see also, *Kennedy* v. *Domerque* (1955) 137 Cal.App.2d Supp. 849, 850-851 [290 P.2d 85].)

In *Barber* v. *California Emp. Stab. Com., supra,* 130 Cal. App.2d 7, claimants, all members of the National Union of

Marine Cooks and Stewards or the Marine Firemen, Oilers, Watertenders and Wipers Union, sued on their own behalf and on behalf of many "hundreds" of merchant seamen in California who had been denied unemployment insurance benefits under similar circumstances, seeking writs of mandate in order to have reviewed the denial of unemployment benefits to them. In finding no ascertainable class, the court stated: "In the instant case, by the very nature of the facts, each of the named claimants must stand or fall upon facts applicable only to himself. Obviously, the status of each claimant as to his employment or unemployment prior to the trade dispute and his actions during the trade dispute depend upon the facts applicable to that claimant. Conceivably, there could be an almost indefinite number of factual situations applicable to the 'many hundreds' of those claimed to be similarly situated that appellants seek to make parties to this action without their knowledge, consent or participation." (P. 15.) To the same effect as *Weaver* and *Barber*, see *Noroian* v. *Bennett, supra,* 179 Cal. 806, 809-810; *Most Worshipful etc. Lodge* v. *Sons etc. Lodge* (1953) 118 Cal.App.2d 78, 91 [257 P.2d 464]; *Goodspeed* v. *Great Western P. Co.* (1937) 19 Cal.App.2d 435, 444 [65 P.2d 1342]; *Jellen* v. *O'Brien* (1928) 89 Cal.App. 505, 509 [264 P. 11, 15].

In other cases, not totally dissimilar to the case at bench, the facts supported the requisite community of interest. In *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, plaintiffs, each an owner of a note in default sold in separate transactions secured by a trust deed on a parcel of land all in the same tract, sued on behalf of themselves and all other owners of trust deeds on lots within the same tract, seeking judicial foreclosure on the trust deeds to the end that all of the secured parcels be sold as a unit. This court stated in finding the requisite community of interest present: "While the notes and trust deeds involved herein are separate; are secured by allegedly separate parcels of property, and were acquired through [the immediate seller] in apparently separate transactions, there are also present a number of questions common to all of these owners of notes secured by trust deeds upon parcels in the Newhall tract. All of the instant trust deeds and notes were created and transferred to Exchange in the same overall transaction, all of the notes and all of the trust deeds are identical as to conditions and provisions, differing only as to face amounts, and all of the allegedly separate 'lots' are situated within the same tract of land and appar-

ently are in the same state of development. It would thus appear that whatever defenses may be asserted or sustained by defendants in the basic action against any one or group of the owners of these 2,139 trust deed notes may be asserted against all such holders, and it has in effect been so stipulated by the parties presently before this court. Because of the essentially similar legal positions of the instant investor-claimants in relation to the defendants in the basic action (see 67 Harv.L.Rev. 1059), it would not seem necessary for each member of the instant class to establish his right to recover as against the defendants upon facts peculiar to his own case, . . .

"Furthermore, it is apparent that there are important factual-legal issues which must be determined on behalf of this entire group of plaintiffs." (58 Cal.2d at pp. 285-286.)

In *Fanucchi* v. *Coberly-West Co.* (1957) 151 Cal.App.2d 72 [311 P.2d 33], 18 plaintiffs, cotton growers who had their cotton ginned by the defendants, sued on behalf of themselves and all other growers similarly situated, to recover for a portion of the cotton seed derived from the cotton delivered by the growers, which portion was retained by defendants and for which the growers had never been paid, because of an erroneous method of accounting for the seed. The cotton seed had been intermingled and the complaint prayed that the defendant be declared a constructive trustee for the excess and for distribution of such excess or the reasonable value thereof to the plaintiffs in accordance with their respective interests. In finding that there was a sufficient community of interest and that there was an ascertainable class, the court stated: "The basic facts necessary to establish liability on the part of the defendants were all exactly the same with respect to each grower, and would have to be established by each grower if he sued separately. Since the cotton seed was mingled, with no records kept as to the weights applicable to any particular grower, a recovery by any grower would have to be on a pro rata basis, the main foundation for which would also be applicable to each and every grower. While the recovery of each grower would have to correspond with the weight of the cotton delivered by him to the gin, that is a matter of record and the amount of each grower's recovery could easily be ascertained by mere mathematical computation. [Citation.] If, as the respondents suggest, the defendant might have a defense as to a particular grower, such as the fact that he actually knew of and consented to the method by which

he had been partially paid for his cotton seed, that situation could well be cared for in this action with fairness to both parties.'' (151 Cal.App.2d at p. 80.) To the same effect as *Chance* and *Fanucchi,* see *Heffernan* v. *Bennett & Armour* (1952) 110 Cal.App.2d 564, 594-595 [243 P.2d 846]; *City & County of San Francisco* v. *Market St. Ry. Co.* (1950) 95 Cal.App.2d 648, 653-654 [213 P.2d 780].

Thus, we must examine the complaint before us in order to determine whether under the facts alleged each person's right to recover is based on questions of law and fact which are separate and distinct. ▇▇▇ The fact that each individual ultimately must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper. ▇▇▇ As we are not unmindful that substantial benefits resulting from class litigation, both to the litigants and to the court, should be found before the imposition of a judgment binding on ꝯ absent parties can be justified, our determination depends upon whether the common questions are sufficiently important to permit adjudication in a class action rather than in a multiplicity of separate suits.

▇▇▇ In our examination of the complaint we are guided by the well settled principles governing the testing of its sufficiency by demurrer: A demurrer admits all material and issuable facts properly pleaded. (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289]; *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Hauger* v. *Gates* (1954) 42 Cal.2d 752, 755 [269 P.2d 609].) However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. (*Retail Clerks' Union* v. *Superior Court* (1959) 52 Cal.2d 222, 226 [339 P.2d 839]; *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 329, 330 [253 P.2d 659]; *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 552 [36 Cal. Rptr. 880].)

▇▇▇ Count one of the complaint contains the following factual allegations establishing a well defined community of interest in questions of law and fact affecting the class of taxicab users therein described: All members of the class purchased Yellow Cab script books; all have used taxicab transportation within four years immediately preceding the commencement of the action; all paid for the transportation with the script book coupons; defendant contracted in writing with all of the class members and the City of Los Angeles that

taxicab service would be furnished at rates established by the commission, but in fact higher rates were charged to all; all class members were overcharged for the taxicab services furnished to them; the percentage of the rate of overcharge to each member of the class was identical and uniform at all relevant times; all sustained a loss by reason of the overcharges; each individual class member is known to defendant; and the exact amount of the overcharge can be ascertained from defendant's books and records and from information within defendant's knowledge.

Count two of the complaint similarly contains the following factual allegations affecting the class of taxicab users therein described: Each member of the class used Yellow Cab transportation within four years immediately preceding the commencement of the action; each paid the fare in cash at the time of each trip; defendant contracted in writing with the City of Los Angeles that taxicab service would be furnished at rates established by the commission, but in fact higher rates were charged to all of the class members; all of the class members were overcharged for the taxicab services furnished to them; the percentage of rate of overcharge to each member of the class was identical and uniform at all relevant times; all sustained a loss by reason of the overcharges; the exact amount of the overcharge can be ascertained at trial; the nature and amount of the overcharge is within defendant's knowledge; and defendant has failed to account for the overcharges.

Since the demurrer admits the truth of the foregoing allegations, both the class in count one and the class in count two are entitled to recover the overcharges under a common set of facts. Proof of separate claims would not be required. (See *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 285-287; *Fanucchi* v. *Coberly-West Co., supra,* 151 Cal.App.2d 72, 80.) We conclude, therefore that the complaint states facts constituting a sufficient community of interest among the class members to support a class action under both counts.

Other factors impel us to the same conclusion. It may very well be assumed that the issues which are common among each group of class members would be the principal issues in any individual action, both in terms of the time to be expended in their proof and of their importance. (See *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 286; *Heffernan* v. *Bennett & Armour, supra,* 110 Cal.App.2d 564, 595.) If a class suit is not permitted here, a multiplicity of legal actions dealing

with identical basic issues will be required in order to permit recovery by each of several thousand taxicab users. The result would be multiple burdens upon the plaintiffs, the defendant and the court. (See *Renken* v. *Compton City School Dist.* (1962) 207 Cal.App.2d 106, 113 [24 Cal.Rptr. 347]; *Heffernan* v. *Bennett & Armour, supra,* 110 Cal.App.2d 564, 595.)

Moreover, absent a class suit, recovery by any of the individual taxicab users is unlikely. The complaint alleges that there is a relatively small loss to each individual class member. In such a case separate actions would be economically unfeasible. Joinder of plaintiffs would be virtually impossible in this case.[14] It is more likely that, absent a class suit, defendant will retain the benefits from its alleged wrongs. ██ A procedure that would permit the allegedly injured parties to recover the amount of their overpayments is to be preferred over the foregoing alternative.[15]

In an effort to undermine the sufficiency of the complaint, defendant argues that even if a class action were permitted, the appearance of each class member in court still would be required, ''for each claimant must appear and testify to the facts, among many others, that he rode a taxicab within the statutory period, the number of such rides, the fare paid for each, and the special damages to him, if any, beyond those

---

[14]The instant case illustrates why the device of the class action evolved. See *Hansberry* v. *Lee, supra,* 311 U.S. 32, 41, where the court said: ''The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable.''

[15]The State of California as amicus curiae argues that the total amount of the overcharge recovered in the class suit should be deposited with the superior court or its named trustee or receiver, subject to an order that class members presenting adequate proof of identity may obtain a refund of overcharges attributable to them. ''At the end of seven years, the uncollected portion of the deposited moneys would be presumed abandoned under the provisions of section 1507 of the Code of Civil Procedure.'' (§§ 1500-1527, constitute the Uniform Disposition of Unclaimed Property Act.) Such a plan would insure that each of the injured parties would recover all of his provable excess payments whenever he establishes his identity and that defendant would not retain the alleged unjustly acquired benefits. In the latter respect, it is argued, the plan is in accordance with the policy articulated in *Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637]. There a corporate taxpayer was not permitted to recover excess sales taxes paid to the state without showing that it would in turn repay its customers, from whom the excess was mistakenly collected.

However, in the present posture of this case, such an argument is prematurely raised and will not be considered here. It lies within the sound discretion of the trial court, within the dictates of the applicable law, to determine the manner in which any further proceedings will be conducted.

alleged in [plaintiff's] complaint. It is perfectly obvious that if [plaintiff] is allowed to maintain a class action, every single claimant must appear in court and prove his claim.'' However, the complaint alleges that the exact amount of the overcharge in each of the two counts is known to the defendant and can be ascertained therefrom. Assuming these facts to be true, as we must here, no appearance by the individual members of the class will be required to recover the full amount of the overcharges in each count.

Defendant also argues that this court may take judicial notice that the allegations in the complaint that proof of a common set of facts will establish the right of every class member to recover and that the rate of defendant's overcharge to each class member ''was identical and uniform at all times herein mentioned'' are untrue. In support thereof, defendant argues that: (1) it is commonly known in the Los Angeles area that defendant computes its fares on a combination of an initial premium rate, a mileage rate and a waiting time rate; (2) it is common knowledge that passengers frequently request their cabs to wait without moving, and that cabs are held up in traffic while under hire, during which instances the meter continues to run; (3) it ''is commonly known, exact mileage traveled is not the basis for the computation of a fare, but the mileage basis of a fare is calculated through the levy of a series of successive additional ten cent charges for successive quarter miles travelled [sic]''; (4) and it is a matter of common knowledge that '' 'tipping' of cab drivers is common and that many script purchasers tip the driver with script.''

It is well settled that matters judicially noticed are considered in testing the sufficiency of a complaint by demurrer. (Weil v. Barthel (1955) 45 Cal.2d 835, 837 [291 P.2d 30].) A court may take judicial notice of facts that ''are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute.'' (Evid. Code, § 452, subd. (g); People v. Torres (1961) 56 Cal.2d 864, 866-867 [17 Cal.Rptr. 495, 366 P.2d 823]; Varcoe v. Lee (1919) 180 Cal. 338, 344-345 [181 P. 223].) Assuming that in a proper case we could take judicial notice (see Varcoe v. Lee, supra, 180 Cal. 338, 343) we decline to do so here. None of the facts suggested by defendant to be judicially noticed are of such common knowledge that they cannot reasonably be the subject of dispute.

We, therefore, arrive at this final conclusion: that

each count of the complaint shows (1) the existence of an ascertainable class and (2) a well defined community interest in the questions of law and fact involved affecting the parties to be represented; and that, accordingly, the complaint and each count thereof sets forth sufficient facts to establish a class action. We hold that the complaint is good against the specification of the demurrer asserting lack of jurisdiction over the subject matter which was the basis of the trial court's ruling and of its transfer of the case to the municipal court. But it is obvious that the above ruling also embraced the specification as to failure to state a cause of action and as to nonjoinder of parties plaintiff.[16] However, it is equally clear from the record that the trial court made no ruling on the specification as to uncertainty. We make no determinations with respect to the special demurrer for uncertainty and the trial court in its discretion may require the clarification of uncertainties alleged to exist in the complaint. (See *Stowe* v. *Fritzie Hotels. Inc.* (1955) 44 Cal.2d 416, 425-426 [282 P.2d 890]; *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 720 [128 P.2d 522, 141 A.L.R. 1358]; *Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 104 [114 P.2d 1].)

The order made January 28, 1965, sustaining the demurrer to plaintiff's complaint and transferring the cause to the municipal court is reversed with directions to the superior court to overrule the demurrer as to all grounds therein specified except the ground of uncertainty, and to rule on the special demurrer for uncertainty. The attempted appeals from all other orders, rulings and judgments are, and each of them is, hereby dismissed. The appellant shall recover costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[16]Defendant demurred on the basis of "nonjoinder of parties plaintiff" under section 430, subd. 4. Therefore, it evidently was contending that the nonjoinder constituted a defect of parties under the foregoing section (see *Summers* v. *Farish* (1858) 10 Cal. 347, 350-351; *Wadleigh* v. *Phelps* (1906) 149 Cal. 627, 634-637 [87 P. 93]) rather than a jurisdictional defect under section 430, subd. 1 (see *Abbot Kinney Co.* v. *City of Los Angeles* (1959) 53 Cal.2d 52, 58 [346 P.2d 385]).